John H. Pennock, J.
The plaintiff makes this motion for
summary judgment in lieu of a complaint pursuant to CPLR 3213. The plaintiff served a summons with a notice of motion for summary judgment with a supporting affidavit. It was returnable 20 days after service. This was all done in compliance with CPLR 3213. The notice demanded that any answer he served five days prior to return day.
On the return date, November 13, 1964, the parties did not submit any papers to the court and requested one week to do so. The Special Term granted this request. There was no oral argument. The summons, notice of motion and affidavit with exhibits was received by the court on November 20, 1964. An opposing affidavit and a further reply affidavit was received on November 24, 1964. The latter was obviously in default, however in view of the newness of CPLR 3213 and its lack of a predecessor in the Civil Practice Act, the court shall accept these papers submitted to that date as the papers on the *685 motion. There is no prejudice to either party as both joined in the motion which the court granted and which afforded more than the usual time permitted. (OPLB 2214, subd. [b].) CPLB 3213 has no counterpart in the Civil Practice Act or in the Buies of Civil Procedure and is intended to produce a beneficial effect for disposition of classic cases which heretofore would be denied this remedy of a more simple, direct and time and expense saving procedure. (McKinney’s Cons. Laws of N. Y., Book 7B, CPLB 3213, p. 817.)
This motion was commenced by the service of summons with notice of motion. Plaintiff’s Exhibit A, an affidavit of service, indicates that these two defendants were served on October 20, 1964 at 3613 Sarah Drive, Wantagh, New York. One of the defendants, Celia Weiss, denies by affidavit that she was personally served. She is the wife of the other defendant, Harold Weiss, who was served. He admits service of two copies of the papers upon him. This immediately raises the question whether service was made upon the defendant Celia Weiss, and if not, was service upon the husband Harold Weiss of two copies of the summons and notice sufficient compliance with CPLB 308 (subd. 1). In support of the plaintiff’s contention, counsel for plaintiff has submitted several cases which he claims show a trend by the courts to adhere less strictly to form of service and give greater recognition to reality. (Marcy v. Woodin, 18 A D 2d 944; Green v. Morningside Hgts. Housing Corp., 13 Misc 2d 124, affd. 7 A D 2d 708; Buscher v. Ehrich, 12 A D 2d 887; Matter of Barbara, 7 A D 2d 340 and Chernick v. Rodriguez, 2 Misc 2d 891.) The facts of the cases cited by the plaintiff are not similar to the present case. Each of the cases is readily distinguishable on the facts and a stronger presumption of service exists in each. There is no evidence here of avoidance of service and no claim that the defendant husband actually delivered the papers to his wife. In our present posture in society and the business world the agency of a husband and wife must be strictly construed, otherwise a defendant wife might be deprived of her day in court in many instances. The court orders that a hearing be held in respect to the issue of whether or not defendant Celia Weiss was served as alleged in the affidavit of service.
The court now directs its attention to the motion in respect to prayer for a summary or an accelerated judgment in respect to Harold Weiss one of the defendants pursuant to CPLB 3213.
The present motion concerns a promissory note which emitted from a contract between the plaintiff and three of the five *686 defendants named in the summons. Harold Weiss is the only defendant over whom this court has jurisdiction. His position as a maker of the note would make him personally liable for the entire sum due if this court sees fit to grant summary judgment.
The defendant with two other named defendants entered into a contract with the plaintiff for the purchase of the outstanding stock of P. B. S. Swan Lake Resorts, Inc., consisting of 75 shares of common stock for a price that would be equivalent to the sum of $275,000 minus all of the obligations of the said corporation. At the time the agreement was entered into the holder of a second mortgage against the real estate of the corporation had commenced a foreclosure action and other obligations had not been met. Apparently the plaintiff, Jack Paul, was the owner of the entire outstanding shares of stock or the trustee for the owners. The contract is ambiguous as to his position, however, that issue has not been raised by any of the parties. The contract set forth the manner in which the purchase price of $275,000 was to be paid. The parts of the contract pertinent to this motion are as follows:
2. In order to secure the payment of the aforesaid sums payable to the first and second mortgagees in August of 1963, the buyers shall, upon the closing, deposit with Louis B. Scheinman, Esq., attorney for the seller, security in the sum of Fifteen thousand and 00/100 ($15,000.00) Dollars. This security shall be held by said attorney in escrow and returned to the buyers upon proof of payment by them of the installments due to the first and second mortgagees, including the $9,000.00 arrearage. In the event that the buyers fail to make the said payments within 15 days after the due dates of said mortgages, the said attorney may use the said security and collect same and apply the proceeds to the extent of Fifteen thousand and 00/100 ($15,000.00) dollars to the said payments. The said security shall consist of: Norman Brown and Harry Weiss agree for themselves to execute and to have their respective wives execute, and Ruth Mishkin shall execute, a promissory note payable to the order of Seymour A. Kesten, Esq. in the sum of $15,000.00 without interest on demand, which note shall contain the usual provision for attorney’s fees, and which shall be turned over by Seymour A. Kesten without delay or question upon affidavit that either of the foregoing mortgage payments have not been made.
The contract also provided in paragraph 11 as follows:
11. Upon the closing herein the buyers shall endorse the stock certificates in blank and turn the same over to Louis B. Scheinman, attorney for the seller to be held by him in escrow. This shall be a pledge of the stock to secure the payments required to be made in 1963 to the first and second mortgagees, and the taxes and fire insurance, and to prevent a foreclosure sale by either of said mortgagees. Upon the above payments being made, and the termination of the bankruptcy proceeding and the termination of litigation with the second mortgagee either by a sueeesful court decree holding the said mortgage not in default, or a refinancing of said mortgage so that no defaults are alleged, the stock certificates shall be returned to the buyers. However, in the event of the failure *687 to make the payments, or in the event of a judgment of foreclosure and sale, the escrow agent shall have the right to turn the stock certificates over to the seller and the seller to regain possession. They (The) buyer shall, nevertheless, have a period of six (6) months thereafter in which to correct any such defaults, pay the expenses incurred as a result thereof, and to redeem the stock.
Paragraph 14 of the contract read as follows:
14. In the event that the seller deems it advantageous to pay the $9,000.00 plus interest arrearage as aforesaid before it is paid by the corporation, buyers do hereby covenant and agree to refund the said sum to him by July 22, 1963, and their failure to repay shall be deemed a default entitling the seller to all remedies hereinabove described and any other that may exist by operation of law.
The plaintiff claims that pursuant to the terms of the contract he made certain payments in the amount of $9,000 plus interest, on a mortgage against the property of the corporation and therefore the defendants were required to pay the said sum so paid out by the plaintiff on or before July 22, 1963. The note given in security had been delivered to the escrow agent and was held by him at the time the plaintiff made the payments as averred in the affidavits.
Plaintiff paid to the holder of the mortgage said arrearage and interest, $9,433, that the defendant failed to repay the same by July 22,1963 as required by the contract. That on September 15, 1964, the plaintiff caused to be filed an affidavit of nonpayment with the escrow agent and the escrow agent then indorsed the promissory note without recourse and turned the same over to the plaintiff. This was all done in accordance with the terms of <the contract.
The plaintiff now claims that he is entitled to a summary judgment or $9,433 plus interest from May 29, 1963, and that in addition thereto a sum for reasonable attorney’s fees for the bringing of this motion to enforce the collection of the principal sum and he sets forth and alleges that a reasonable sum is $1,500.
The defendant fails to deny in his answering papers that the sum of $9,433 is now due and owed to the plaintiff by the defendant and the five comakers of the note. The plaintiff’s papers also contain an exhibit which is a letter signed by the defendant as secretary of the corporation in which he states: “We will pay you the sum of $9,433 by September 30th, 1964.” The letter also confirms the remainder of the plan as called for by the contract. The plaintiff claims that the letter was written erroneously as a corporation officer and its clear intent was that it was written personally by the defendant, Harry Weiss. The court finds that in any event whether the letter was written *688 as a corporation officer or as an individual the wording of the letter indicates that the obligation was confirmed by the writer individually in that he refers to the defendant as “ We ”. This is clear evidence of the amount due on the instrument for the payment of money only. All of the defendants listed were comakers of the note and none of them are sureties. Therefore it was not required that any of them be given notice of the extension of time to pay as granted by the plaintiff. In any event the sole defendant here had notice as evidenced by the admissions contained in his letter. He cannot draw a distinction between his knowledge personally and as a corporate officer. At least that defense is not available to him. The defendant also claims that the note and the agreement are inseparable and that the motion for summary judgment is not based upon the note only. In this the court agrees with the defendant, Weiss. However, it has no merit for the denial of the granting of the motion. There is nothing unusual in having instruments of this type issued contemporaneously with written agreements. The separate writing is most commonly an agreement creating or providing for a security interest such as a mortgage, chattel mortgage or pledge. It may be a type of contract, including an agreement that upon certain conditions the instrument shall be discharged or is to be presented for payment. Relevant terms in the contract may affect the instrument, but in the instant case there is no room for any construction of the written instrument taken in conjunction with the note that would create any intention of the parties that the note was not a pure promissory note given as security for the performance of certain acts by the defendants.
In the instant case we are not concerned with the negotiability. The note was turned over to an escrow agent who was in effect an agent for the defendant maker and he indorsed it over to the plaintiff herein without recourse. Ordinarily the function of the court is to determine from the inspection of the instrument what the instrument contains and means. But where there is ambiguity in an instrument any extrinsic evidence as to the intention of the parties is admitted, the question of the construction may be for the jury to decide, which in this instance would defeat the motion for an accelerated judgment. However, in the instant case there is no question of fact as to the note itself. The provision in the contract calling for the note to contain the usual provisions for attorney’s fees is a question of fact. The note contained no such provision and even if it had the wording on the note calling for the payment of the usual attorney’s fees on enforcement for collection this *689 court would not be in a position to determine the reasonable attorney’s fees, as that issue is a question of fact for a jury to decide. (Arthur v. Roberts, 60 Barb. 580.) The instrument has a plain legal meaning and no further evidence is necessary ■to convince this court that this action is based upon the enforcement of a collection on a pure promissory note given for security, contra as to the attorney’s fees. The plaintiff has no standing before the court on this part of his motion. If it is reformation he is seeking his remedy is in equity. Further the court, from the papers before it, can find no authorization for completion by the escrow agent as to the attorney’s fees for collection. As between the obligor, the defendant herein, and his immediate obligee, the plaintiff, the terms of the instrument may be modified or effected by the contract executed as part of the same transaction. But this cannot be accomplished on the present motion as two of the makers were not parties to the contract. (Title Guar. & Trust Co. v. Pam, 232 N. Y. 441; Kelso & Co. v. Ellis, 224 N. Y. 528.) Of course if the plaintiff were a holder in due course, which is not the case here, he would not be affected by any limitation of his rights arising out of the separate contract without notice of the limitations when he took the instrument. Other parties, such as the defendant comakers, who were not served on this motion, are not affected by the separate writing unless they were also parties to it as a part of the transaction by which they became bound on the instrument. In the instant case there is no evidence before this court to treat these parties other than as comakers and the fact that they are not served and not parties to this motion eliminates them from consideration in this decision. In any event the accommodation comakers would not be bound by any reformation of the note to include reasonable attorney’s fees upon collection if such was unknown to them at the time they signed the note. These are all pure questions of fact as to these defendants. The plaintiff’s claim of mutual mistakes on the failure of the inclusion of the provision for reasonable attorney’s fees lacks merit on this motion in that such claim cannot be considered under a motion of this nature for accelerated judgment.
The defendant by general averments attempts in his answer to raise questions in respect to payments, but he fails to raise any issue other than the attorney fee provision. He also claims the plaintiff resorted to the stock pledged as security. The court determines the pledging of the stock was separate and apart according to the contract and has no bearing on the promissory note, the issue on this motion.
*690 In conclusion the court grants the motion for a partial summary judgment in the amount of $9,433 with interest from the 29th day of May, 1963, and denies that part of the motion for summary judgment of $1,500 for attorney’s fees on collection, without prejudice of the plaintiff to proceed for reformation or by any other action in law in respect to the issue of reasonable attorney’s fees. (CPLR 3213; 3212, subd. [e].) The court further determines that this judgment shall be against the defendant Harold Weiss only. The issue whether or not Celia Weiss was served shall be subject to a hearing before this court without prejudice of the plaintiff to abandon the motion as to her and commence the action anew, or in the event of a favorable determination to reapply for the relief sought herein.